| | |
|---|---|
| 1 | C. D. Michel - Cal. B.N. 144258 |
| | (pro hac vice application forthcoming) |
| 2 | MICHEL & ASSOCIATES, PC |
| | 180 E. Ocean Boulevard, Suite No. 200 |
| 3 | Long Beach, CA 90802 |
| | Telephone: 562-216-4444 |
| 4 | Facsimile: 562-216-4445 |
| | Email: cmichel@michelandassociates.com |
| 5 | |
| | David T. Hardy - S.B.N. 4288 |
| 6 | 8987 E Tanque Verde, No. 309 |
| | Tucson, AZ 85749-9399 |
| 7 | Telephone: 520-749-0241 |
| | Facsimile: 520-749-0088 |
| 8 | Email: dhardy@michelandassociates.com |

Attorneys for Proposed Defendant-Intervenor
National Rifle Association

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

### PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> U.S. BUREAU OF LAND MANAGEMENT; RON WENKER, Acting Director of U.S. Bureau of Land Management; JAMES KENNA, BLM Arizona State Director; KEN SALAZAR, Secretary of Interior, and U.S. FISH AND WILDLIFE SERVICE, <br><br> Defendants, and <br><br> NATIONAL RIFLE ASSOCIATION, Proposed Defendant-Intervenor. | CASE NO. 3:09-cv-08011-PCT-PGR <br><br> **NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, DECLARATIONS IN SUPPORT THEREOF** <br><br> **ORAL ARGUMENT REQUESTED** |

TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 3, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 601 in the Sandra Day O'Connor Courthouse at 401 W. Washington Street, Phoenix, Arizona, before the Honorable Paul G.

1

NRA'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

Rosenblatt, Proposed Defendant-Intervenor National Rifle Association ("NRA") will, and hereby does, move this Court for an Order granting it leave to intervene as a defendant in the above-titled action, under Federal Rules of Civil Procedure ("FRCP") Rule 24(a), or alternatively with permission of this Court under FRCP Rule 24(b).

Oral Argument is requested pursuant to LRCiv 7.2(f), as this case is one of broad public importance wherein the parties currently joined are not poised or to likely to advocate solely for the interests underlying NRA's proposed intervention. Oral argument will assist the Court in obtaining a better view of the issues relevant to NRA's proposed intervention, and will give the Court an opportunity to make inquiries as to any issues it deems relevant but that were not briefed by the parties. Such opportunity is especially appropriate here because NRA's alternative request for permissive intervention hinges on judicial discretion, which, by its discretionary nature, tends to raise a broader scope of issues than can be fully addressed in concise briefing.

The Motion of NRA is and will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declaration(s) and exhibits attached therewith, the [Proposed] Answer in Intervention to Plaintiff's First Amended Complaint, all pleadings and papers filed in this Action, and any and all arguments and evidence presented by counsel at the requested hearing.

Respectfully submitted this 14th day of October, 2009.

MICHEL & ASSOCIATES, P.C.

*/s/ David T. Hardy*
David T. Hardy, Affiliate Counsel to Michel & Associates, P.C., *Attorneys for Proposed Defendant-Intervenor National Rifle Association*

# MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

## I. INTRODUCTION

NRA respectfully requests this Court grant NRA leave to intervene on behalf of Defendants U.S. Bureau of Land Management ("BLM"), U.S. Fish and Wildlife Service ("FWS"), and the related parties sued in their official capacities (collectively "Defendants"). As explained below, NRA satisfies the requirements for intervention as of right under FRCP Rule 24(a), as well as the requirements for permissive intervention under FRCP Rule 24(b). Accordingly, NRA seeks leave to intervene as to the factual and legal allegations implicating hunting (especially as to the Fourth and Fifth Claims for Relief) made in Plaintiff Center for Biological Diversity's ("CBD") First Amended Complaint (the "Complaint").

## II. PROCEDURAL HISTORY

Relevant to NRA's proposed intervention, the Complaint seeks to have BLM's implementation of certain Resource Management Plans and FWS' issuance of a related Biological Opinion declared to be in violation of the Endangered Species Act ("ESA"). (*See* Complaint, Docket No. 21, at pp. 35-36, ¶¶ (4)-(5)). CBD seeks such declaratory relief based on the aforementioned agencies' allegedly insufficient consideration of how lead ammunition (i.e., ammunition incorporating a lead projectile) use impacts California condors in the Arizona Strip District ("ASD"). (*See id.* at pp. 33-34, ¶¶ 97-100).[1]

The alleged ESA violations arise from the supposition that California condors in Arizona, part of an experimental and nonessential population (see 16 U.S.C. Section

---

[1] The ASD comprises vast amounts of BLM and National Parks Service-managed land in Arizona, including Grand Canyon-Parashant National Monument and Vermillion Cliffs National Monument. *See generally* http://www.blm.gov/az/otherNLCS-map.htm, http://www.blm.gov/az/st/en/fo/grand_canyon-parashant.html, http://www.blm.gov/az/en/fo/arizona_strip_field.html, and http://www.blm.gov/pgdata/etc/medialib/blm/az/images/parashant.Par.15818.File.dat/parashantmap.pdf. As a point of clarification, the Arizona Strip includes all of the ASD except Grand Canyon-Parashant National Monument and the land in the ASD that is directly south of that monument. *See id.*

NRA'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

1539(j) and 50 C.F.R. Part 17.84(j)), are scavenging hunter-shot game, and as a result are being poisoned by lead shot or bullets present in the carrion. (*See* Complaint at p. 21, ¶ 49). NRA contends CBD's supposition is based on faulty scientific analyses. NRA further contends this exact supposition was *raised, addressed, and dismissed* over ten years ago when California condors were introduced to Arizona. *See generally* Fish and Wildlife Service, 61 Fed. Reg. 54,044 (Oct. 16, 1996).

NRA's proposed intervention is based largely on the fact that the relief CBD seeks conflicts with federal law. If the relief sought is granted, it will significantly and unnecessarily burden the longstanding tradition of hunting in northwestern Arizona. NRA has both a current interest in and a decades long record of opposing unjustified impingements on hunting in both nationally and specifically in Arizona. (*See* Declaration of Chris Cox at p. 1, ¶ 4); *see also infra* note 5 and the cases cited therein.

### III. FACTUAL BACKGROUND

#### A. General Background Regarding NRA and Its Advocacy Activities

NRA is a tax-exempt corporation under 26 U.S.C. Section 501(c)(4), incorporated in New York in 1871. (*Id.* at ¶ 2). NRA's principal offices are in Fairfax, Virginia. NRA's membership includes approximately four million individuals, with nearly 100,000 members in Arizona alone. (*Id.*). One of NRA's primary purposes is "to promote and defend hunting as a shooting sport and as a viable and necessary method of fostering the propagation, growth and conservation, and wise use of our renewable wildlife resources." (*Id.* at ¶ 3). NRA has represented the interests of hunters in Arizona and other states by sponsoring pro-hunting legislation and referenda, as well as challenging unreasonable anti-hunting laws and regulations. (*See id.* at pp. 1-2, ¶¶ 4-8).

NRA is especially knowledgeable regarding one subject implicitly raised by CBD's lawsuit: the deficiencies in the scientific analyses supporting the theory that California condors are being poisoned as a result of ingesting hunter-shot lead. As recently as August 6, 2009, scientific experts, researchers, and attorneys working with NRA submitted evidence to and testified before the California Fish and Game Commission

("Commission") rebuffing the scientific explanation supposedly demonstrating a link between lead ammunition used in hunting and California condor mortalities. (*See* Declaration of C.D. Michel at p. 2, ¶ 3).

Based in large part on NRA's efforts, the Commission voted against adopting regulations expanding current bans on lead ammunition use in California, reasoning the reports submitted by the experts and attorneys working with NRA demonstrated the scientific analysis supposedly showing a link between lead ammunition and condor mortalities was faulty. (*Id.* at p. 3, ¶ 7).

**B.   Hunting in the ASD**

From 2003 to 2008, at least 1,245 permits were issued to hunt big game in the Arizona Strip, resulting in 727 big game animals being obtained.[2] Hunting permits are issued in Arizona to hunters who participate in a draw.[3] There were at least 39,940 draw applications submitted between 2003 and 2008 by individuals who desired but did not receive permits. *See* note three herein. Many of the people who seek these tags, as well as the guides who assist them in filling the tags, are NRA members. (*See* Declarations of Dr. Todd Geiler at p. 1, ¶¶ 2-3; Don Martin at p. 1, ¶¶ 2-3; and David Nystrom at p. 1, ¶¶ 2-3).

Lead ammunition is traditionally used for hunting because, as to that particular use, hunters generally consider it to be abundant, economical, and ballistically proven when compared to non-lead ammunition. (*See* Geiler Decl. at pp. 1-2, ¶ 5; Martin Decl. at pp. 1, ¶ 5). Moreover, it is, at best, extremely difficult to procure non-lead ammunition (i.e., ammunition that uses a non-lead projectile) in Arizona in calibers for hunting small game

---

[2] *See* http://www.azgfd.gov/pdfs/h_f/hunting/Hunt_AZ_2009.pdf (listing statistics for permit applicants, permits issued, and number of animals obtained (for big and small game) between 2003 to 2007 in Arizona Strip (Units 13-A and 13-B); *accord* http://www.azgfd.gov/pdfs/h_f/hunting/Hunt_AZ_2009.pdf (as to the years 2004 through 2008). Since 2003, thousands of small game animals were obtained from the Arizona Strip and surrounding areas. *Id.*

[3] *See* http://www.azgfd.gov/h_f/hunting.shtml ("The draw is a lottery-style process for allocating the limited number of Arizona big game and other limited species hunt permit-tags to applicants.").

NRA'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

and turkey, both of which are often hunted the Arizona Strip. (*See* Declaration of Eric Soderblom at p. 1, ¶ 5-7); *see also supra* website pages cited at note 2.

## IV.  ARGUMENT

### A.  NRA Is Entitled to Intervene as a Matter of Right

NRA is entitled to intervene as a matter of right. FRCP Rule 24(a) provides that:

> [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Ninth Circuit Court of Appeals "construe[s] Rule 24(a) liberally in favor of potential intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006); *see Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (Rule 24 "is construed broadly in favor of...applicants"). The Ninth Circuit has held:

> [a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, [courts] often prevent or simplify future litigation involving related issues; at the same time, [they] allow an additional interested party to express its views before the court.

*United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002).

The Ninth Circuit has established a four prong test to determine whether intervention as a matter of right is warranted:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*California ex rel. Lockyer,* 450 F.3d at 440 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). Because NRA meets the requirements of each prong of the test, intervention should be granted as a matter of right.

6

NRA'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

**1. NRA's Motion to Intervene Is Timely**

"Courts weigh three factors in determining whether a motion to intervene is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

**a. The Proceedings Have Not Progressed Substantially**

The parties have yet to appear at a Case Management Conference, and this Court has not yet issued any substantive orders or rulings. These facts weigh in favor of a finding this Motion is timely. *See* 7C Charles Allen Wright, Arthur Miller, & Mary R. Kane, *Fed. Practice & Procedure* § 1916 & n.13 (2d ed. 1986) (noting that an application for intervention made before parties have joined issue in the pleadings is "clearly timely"). Furthermore, the administrative record, which is at the center of this dispute, has not yet been filed with the Court.

**b. NRA's Intervention Would Not Prejudice the Parties**

Because this litigation has not even reached a hearing to set trial dates or discovery deadlines, intervention will not prejudice any party. *See Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (holding a district court did not abuse its discretion in concluding an intervenor's application was timely because the application "was filed at a very early stage, before any hearings or rulings on substantive matters").

**c. There Was No Unreasonable Delay in Bringing this Motion**

CBD amended its Complaint to add the Fourth and Fifth Claims for Relief on March 25, 2009. (Complaint). As NRA did not receive notice of CBD's intent to file (or amend) suit, NRA did not have notice of the Action until after it was amended. (*See* Michel Decl. at p. 4, ¶ 8). Within months of the Action being amended, NRA: became aware of the Action, evaluated the various complex issues it raises, internally determined that it would file this Motion, and had counsel prepare this Motion. (*Id.*). In light of the highly technical area of law at issue, and further considering NRA was not directly apprised of the filing or amending of the Complaint, there was no delay sufficient to weigh

against intervention. Thus, as to all three factors at issue, NRA's Motion is timely.

### 2. NRA Has a Significantly Protectable Interest in This Litigation

"An applicant has a 'significantly protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)). NRA satisfies these requirements.

#### a. NRA Asserts an Interest in Hunting that Is Protected by Law

A proposed intervenor need not establish any "specific legal or equitable interest" to satisfy Rule 24(a). *City of Los Angeles*, 288 F.3d at 398 (citations omitted). Instead, courts "make a practical, threshold inquiry" into an applicant's interest, bearing in mind that the interest test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id*. (citations omitted).

NRA's nationwide advocacy for hunters' rights establishes its "interest" in this litigation. As indicated at Section III(A) herein, one of NRA's key functions is to preserve the tradition of hunting, protecting it from unreasonable and unnecessary restrictions. (*See* Cox Decl. at p. 1, ¶ 4). Hunting permits for the Arizona Strip are sought by literally thousands of hunters yearly. (*See supra* Section III(B)). Based on the large number of hunters applying for permits to hunt in the Arizona Strip, many of whom are NRA members, it is clear hunting in the ASD is immensely popular and a legitimate[4] interest NRA has the right to protect. (*See* Geiler Decl. at p. 1, ¶¶ 2-3; Nystrom Decl. at p. 1, ¶¶

---

[4] There is no doubt hunting is recognized as an important interest in Arizona. Arizona offers 18 different types of hunting licenses. Arizona Revised Statutes ["A.R.S."] §17-333(A)(1)-(18). Furthermore, it is illegal in Arizona to "intentionally interfere with, prevent or disrupt the lawful taking of wildlife." A.R.S. §17-316. Also, "it is a class 3 misdemeanor for a person to enter or remain on a designated hunting area on any public or private lands … with the intent to interfere with, prevent or disrupt the lawful taking of wildlife." *Id.*

2-3). NRA members and other hunters who hold current permits may have a vested right to hunt in the ASD. NRA intends to protect such rights.

Furthermore, NRA has a long history of advocacy related to protecting and preserving the rights of hunters to continue to enjoy areas that have traditionally been open to hunting. (*See* Cox Decl. at pp. 1-2, ¶¶ 5, 7). NRA has an established record of advocating against restrictions on hunting based on scientifically unsupported claims of alleged environmental harm. (*See id.* at ¶¶ 5, 8). In fact, during the last thirty-five years, NRA has intervened in multiple lawsuits potentially affecting the interests of hunters.[5]

There will likely be a direct impact on hunting (e.g., an injunction banning hunting in the ASD with lead ammunition) if no party rebuts CBD's unfounded claim that the "[e]vidence is overwhelming and there is scientific consensus that hunter-shot lead is the primary, if not the sole, source of lead that is poisoning California condors." (Complaint at p. 21, ¶ 49). Because it appears that one goal of CBD's lawsuit is to eliminate the use of lead ammunition in the ASD (e.g., a restriction on hunting), and because NRA has an interest in preventing such restrictions (as part of NRA's interest in protecting hunting), NRA possesses the type of interest that is plainly sufficient under Rule 24(a).

### b. There Is a Relationship Between NRA's Legally Protected Interest and CBD's ESA-Based Claims

To satisfy the second element of the "significant protectable interest" test, an applicant must show "a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409. "The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant." *City of Los Angeles*, 288 F.3d at 398 (quotation marks and citation omitted). This rule is not to be applied

---

[5] *See Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1975) (regarding the setting of certain hunting seasons by FWS); *Defenders of Wildlife v. Hall*, 565 F. Supp 2d 1160 (D. Mt. 2008) (regarding the removal of the northern Rocky Mountain gray wolf from protected status under ESA); *Wilderness Watch v. U.S. Fish & Wildlife Serv.*, 07-1185-PHX-MHM, 2008 U.S. Dist. LEXIS 70548 (D. Az. Sept. 8, 2008) (regarding certain agency actions related to the creation of watering tanks to provide supplemental water to wildlife). For the avoidance of doubt, the three cases cited above are not cited as authoritative, but rather as factual evidence that NRA intervened each of the listed actions.

rigidly: "a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F.3d at 441.

CBD's claims regarding the California condor can be summarized succinctly: CBD contends BLM and FWS took certain administrative actions without properly and fully considering the alleged link between the use of lead ammunition for hunting in the ASD and certain California condor mortalities. (*See Generally* Complaint). Therefore, this Action, whether resolved by court order or settlement, has a reasonable chance of resulting in a lead ammunition ban or similar use restriction regarding hunting in the ASD.

It is not unreasonable to presume that if the Action is successful as to CBD's condor-related claims, hunting will be at least restricted (e.g., a ban of lead ammunition), if not fully curtailed, in the ASD. The potential for such a result is not based in wild speculation: a temporary hunting ban was effectively created (with an exception for certain "steel shot zones") by an injunctive relief order issued in *Nat'l Wildlife Federation v. Hodel*, Case No. S-85-0837 EJG, 1985 U.S. Dist. LEXIS 20891 (E.D. Cal. Aug. 26, 1985), an ESA case somewhat similar to this action.[6] Because a ban or similar result would "practically impair" the interests in hunting asserted by NRA, there is a direct relationship between NRA's interest and CBD's claims.

### 3. The Relief CBD Seeks May Impair NRA's Interest in the Protection of the Established Tradition of Hunting in the Arizona Strip

Under the third prong of the Rule 24(a) intervention inquiry, a party must demonstrate the litigation "may as a practical matter impair or impede" its ability to protect its interests. Fed. R. Civ. P 24(a)(2); *see Calif. ex rel. Lockyer*, 450 F.3d at 440.

---

[6] In *Hodel*, an environmental group alleged FWS violated ESA and other statues when, in the course of taking certain agency actions related to the regulation of hunting, FWS failed to consider the effect of hunters' lead ammunition use on bald eagles. *Id.* at *17-18. *Hodel* is not being cited as persuasive or mandatory authority. Rather, it is raised as evidence of the fact that the court in *Hodel* issued an order, based in part on FWS' noncompliance with ESA, that *prohibited* FWS "authorizing, purporting to authorize or allowing any and all hunting of migratory birds for the 1985-1986 hunting season in the disputed areas" unless mandatory lead ammunition bans were put into place. *Id.*

When analyzing this issue, courts are guided by the Advisory Committee Notes for the 1966 Amendments to Rule 24(a), which explain: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (relying on abovementioned Advisory Committee Notes).

Here, CBD attempts to challenge BLM's adoption of particular Resource Management Plans and FWS' issuance of a Biological Opinion. CBD seeks declaratory relief holding the aforementioned agency actions violated ESA by failing to consider the contention that hunters' use of lead ammunition can put California condors in jeopardy. (*See* Complaint at pp. 2-3, ¶¶ 3-4; pp. 35-36, ¶¶ 4-5). Further, CBD seeks judicial review under 16 U.S.C. Section 1540(g), which authorizes the injunction of an activity, even if such activity is conducted by the Federal Government. (Complaint at p. 33, ¶ 97);[7] *see* 16 U.S.C. Section 1540(g)(1)(a). Thus, it is plainly possible that this Court could issue an order restricting or banning hunting similar to what occurred in *Hodel*.

If CBD obtains injunctive relief that effectively enjoins or limits the use of lead ammunition for hunting in the ASD, or if CBD obtains a settlement wherein FWS/BLM agree to some level of restriction on lead ammunition use, it will substantially affect the interests of NRA members and other hunters who enjoy hunting in the ASD. Such an injunction or settlement would deprive ASD hunters of the ammunition they consider to be abundant, economical, and ballistically proven. (*See* Geiler Decl. at p. 1, ¶ 5; Martin Decl. at pp. 1-2, ¶ 5). And to the extent non-lead ammunition is not generally available in the calibers used for hunting small game and turkey (both of which are popular game in the ASD, see Section III(B) herein), a judicially imposed or settlement-based lead ammunition ban would preclude the hunting of such animals in the ASD by hunters who cannot afford or locate non-lead ammunition.

There is a strong possibility NRA's attempts to protect an interest in hunting in the

---

[7] Injunctive relief could also be granted pursuant to CBD's prayer for "such other and further relief as the court [sic] deems just and proper." (*Id.* at p. 36, ¶ 10).

ASD will be impaired and impeded by the resolution (be it by judicial determination or settlement) of this Action. Thus, NRA meets the requirements of the third prong.

### 4. NRA's Interests Are Not Adequately Represented by Defendants

Rule 24(a)'s final prong requires an applicant for intervention as a matter of right "must be inadequately represented by the parties to the action." *California ex rel. Lockyer*, 450 F.3d at 440. This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. UMW*, 404 U.S. 528, 538 n.10 (1972) (citation omitted); *see Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (citing *Trbovich*).

#### a. No Presumption or Assumption of Adequacy Arises Herein

There are certain scenarios wherein a presumption or assumption of adequacy of representation may arise: 1) a presumption of adequacy arises when "an applicant for intervention and an existing party have the same ultimate objective[,]" and 2) an assumption of adequacy may arise when the proposed intervenor and a governmental entity are "on the same side." *Id.* (citation omitted).

The presumption does not arise herein because NRA and Defendants have different objectives. NRA's main objective in intervening is obtaining a ruling that the alleged failure to consider the potential impact of lead ammunition use on condors is irrelevant or harmless error because, among other reasons, that potential impact was expressly considered and accepted as condition of the introduction of condors into Arizona. (*See* [Proposed] Answer at p. 18, ¶ 16); 61 Fed. Reg. at 54,050-55. As Defendants' have not raised this issue, and further considering that Defendants' likely objective herein is to have this Action voluntarily terminated or adjudicated (on any grounds) in Defendants' favor, it appears Defendants and NRA do not share the same ultimate objective, and this presumption does not arise.

Though an assumption may arise when, as here, a government entity is "on the same side" as a proposed intervenor, that assumption *does not* arise when that entity is

NRA'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

"required to represent a broader view than the more narrow, parochial interests" of a proposed intervenor. *Forest Conservation Council*, 66 F.3d at 1499.[8] Defendants are charged with representing the general public, which includes a broad spectrum of land users, including non-hunters, some of whom may advocate restricting or eliminating the use of lead ammunition in the ASD. NRA, in contrast, represents a narrower and more focused interest herein: maintaining the status quo for hunting in the ASD. Accordingly, this assumption does not arise.

### b. All Relevant Factors Indicate NRA's Interest Is Not Represented by Defendants

To determine whether an applicant's interest is adequately represented by the existing parties, courts in the Ninth Circuit consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The most important factor in determining the adequacy of representation is how the interest [of the proposed intervenor] compares with the interests of existing parties." *Id.* (citation omitted).[9]

#### i. The Interest of Defendants Is Not Such That They Will Undoubtedly Make All of NRA's Arguments

NRA is inadequately represented in this Action unless existing parties "*will undoubtedly make all*" NRA's arguments. *Arakaki*, 324 F.3d at 1086 (italics added). NRA intends to argue, among other things, that at the time of the relevant agency actions, the best scientific evidence available *did not* establish a nexus between California condor

---

[8] *See also Johnson v. S.F. Unified Sch. Dist.*, 500 F.2d 349, 354 (9th Cir. 1974) (determining that school district did not adequately represent the particular views of parents of children of Chinese ancestry when, inter alia, district was charged with representing all parents in the school district); *cf. Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (noting that presumption of adequacy of representation is overcome when applicant for intervention demonstrates it "might bring a perspective materially different from that of the present parties" (*citing Sagebrush Rebellion*, 713 F.2d at 528)).

[9] Though this comparison is not one of the three enumerated factors, it appears to be a restatement of the first factor.

13
NRA'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

illness and hunters' use of lead ammunition in the ASD. If necessary, NRA is prepared to disprove CBD's assertion that "the evidence is overwhelming and there is scientific consensus that hunter-shot lead ammunition is the primary, if not the sole, source of lead that is poisoning California condors." (Complaint at p. 21, ¶ 49).

In contrast, Defendants likely will not challenge CBD's proffered evidence and basic underlying theory that hunter-shot lead projectiles pose a particular threat to condors. FWS has apparently accepted as truth that certain condors have died from lead poisoning resulting from the ingestion of lead present in hunter-shot carrion. *See* 61 Fed. Reg. at 54,055. Indeed, prior to the introduction of California condors into Arizona in 1996, FWS stated it *expected* some of the introduced condors would die as a result of ingesting lead present in hunter-shot carrion. *Id.* FWS also stated, however, that the loss "would presumably be more than compensated by natural and captive reproduction." *Id.*

Furthermore, Defendants apparently agree with CBD's assertion that lead poisoning has been the leading cause of death for condors released in Arizona.[10] NRA, however, is currently in the process of obtaining and reviewing *all* California condor necropsies and the relevant administrative records, and thus far has found evidence that suggests, in fact, that lead poisoning *may not* be the leading cause of death of condors released in Arizona. (*See* Michel Decl. at p. 3, ¶¶ 5-6). Accordingly, NRA plans to argue that the administrative record and the relevant scientific data do not support CBD's assertion regarding the prevalence of lead-related condor mortalities, an assertion that will likely be at the heart of many of CBD's arguments throughout this litigation.

Based on Defendants taking the position that lead poisoning is the leading cause of death in Arizona-released condors, and further based on Defendants' apparent adoption of the contention that there is a relevant link between lead ammunition use and condor

---

[10] (*See* Defendants' Answer, Docket No. 31, p. 8, ¶ 49, wherein Defendants admit Plaintiff's allegations that: "[s]ince condors have been released in Arizona their leading cause of death has been lead poisoning, with at least 12 to 14 condors dying of lead poisoning in Arizona").

mortality, it is doubtful Defendants will make NRA's arguments that run contrary thereto.

      **ii.**   **Defendants' interests are not such that they are "capable and willing" to make all NRA's arguments**

When evaluating whether a present party to litigation will represent the interests of a proposed intervenor, a court must determine if the present party is capable and willing to make the same arguments as the proposed intervenor. *Arakaki*, 324 F.3d at 1086. Because Defendants' responsibilities are to a broad class of divergent interests (see Section IV(A)(4)(a) herein), it is unlikely they are "capable and willing" to make the narrow and insular arguments NRA will make to maintain the status quo for hunting in the ASD. Thus, this factor weighs in favor of finding Defendants' representation will be deficient as to NRA's interest.

      **iii.**   **NRA will offer necessary elements to the proceedings that Defendants may neglect**

NRA has expertise in the subject matter of this lawsuit as to the California condor. The experts, consultants, and attorneys working with NRA have compiled and analyzed relevant scientific data and related material to effectively rebut the scientific deficiencies that underlay the contested conclusion that condors are dying from the ingestion of hunter-shot lead. (*See* Michel Decl. at p. 3, ¶¶ 5-7). NRA is unaware of Defendants having this particular expertise. Thus, NRA contends Defendants may not be able to defend against CBD's hunting-related allegations as comprehensively and zealously as could NRA.

  In summary, NRA's interests, defenses, and background are not in accord with Defendants'. Because it is clear Defendants will likely not represent NRA's interests, this prong, like all of the other three prongs regarding intervention as of right, has been met. Therefore, NRA meets the requirements for intervention as of right, and requests the Court grant this Motion.

**B.**   **NRA MEETS REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER RULE 24(b)**

If this Court finds NRA cannot intervene in this case as a matter of right, NRA requests that the Court grant it permissive intervention under Rule 24(b). That rule states:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall

    consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

FRCP 24(b). Like intervention of right, permissive intervention is to be granted liberally. *See* 7C Wright, Miller, & Kane, § 1904.

  NRA meets all of the prerequisites for permissive intervention. As expressed throughout this Memorandum, NRA seeks to protect hunting as it exists today in the ASD. NRA's defenses arise directly in response to the allegations in CBD's Complaint. As a result of that fact, NRA's defenses implicitly share substantial questions of law and fact with the issues raised by the Action. And as discussed at Section IV(A)(1) herein, this Motion is timely and will not prejudice the rights of the existing parties.

  Moreover, by allowing NRA to intervene, the Court will have a single party that will advocate for the rights of tens of thousands of hunters that would otherwise not have their interests represented in this Action. That is, because of the potential impact on hunters and the complexity of the issues involved, there are sufficient grounds upon which NRA should be allowed to intervene. *See The Humane Society of the U.S. v. Clark,* 109 F.R.D. 518, 521 (D.D.C. 1985). In *Clark*, a hunting advocacy organization (WLFA) was granted permission to intervene in an action wherein the plaintiff filed suit against federal agencies for alleged violations of various federal statutes in connection with the management of National Wildlife Refuges. *Id.* at 519. In allowing WLFA to intervene, the court reasoned that including WLFA to directly represent the interests of hunters in a matter of such scope and complexity was appropriate. *Id.* at 521

  Because NRA's interests are not represented by existing parties, its participation will contribute to an equitable resolution of this case and "contribute to a full development of the underlying issues in the suit." *Or. Envt'l Council v. Or. Dep't of Envt'l Quality*, 775 F. Supp. 353, 359 (D. Or. 1991). Accordingly, even if this Court denies NRA intervention as a matter of right, there is ample basis for the Court to permit NRA's intervention in this Action. *See Calif. ex rel. State Lands Comm'n v. United States*, 805 F.2d 857, 860, 865-66 (9th Cir. 1986) (upholding grant of permissive intervention to

NRA'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT THEREOF

conservation groups allowing intervenors to join United States in defending a quiet title lawsuit brought by the State of California).

## V. CONCLUSION

For the foregoing reasons, NRA satisfies the requirements for intervention as of right as well as permissive intervention. NRA's Motion is timely and supports the interests that NRA and its members have in maintaining the status quo for hunting in the ASD. As Defendants' goal is likely to defeat CBD's claims *regardless* of the grounds upon which such defeat occurs (and not to address the impact those claims may have on hunters in the ASD), and because Defendants are bound to consider multiple competing interests (whereas NRA has but one interest to protect), NRA's presence in this Action is appropriate.

In light of the foregoing, NRA respectfully requests this Court grant NRA's Motion to Intervene as of Right. Alternatively, NRA requests it be granted permissive intervention.

Respectfully submitted this 14th day of October, 2009.

MICHEL & ASSOCIATES, P.C.

*/s/ David T. Hardy*
David T. Hardy, Affiliate Counsel to Michel & Associates, P.C., *Attorneys for Proposed Defendant-Intervenor the National Rifle Association*

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2009, I electronically transmitted the document Notice of Motion and Motion for Leave to Intervene, Memorandum of Points and Authorities in Support Thereof, Declarations in Support Thereof to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Adam F. Keats
John T. Buse
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Tel.: (415) 436-9683
akeats@biologicaldiversity.org
jbuse@biologicaldiversity.org

Attorneys for Plaintiff

Richard Glen Patrick
US Attorney's Office
2 Renaissance Sq
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004-4408
Tel.: (602) 514-7500
richard.patrick@usdoj.gov

S. Jay Govindan
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, DC 20044-7369
Tel No.: (202) 305-0237
Jay.Govindan@usdoj.gov

Luther L. Hajek
US Dept. Of Justice ENRD
P.O. Box 663
Ben Franklin Station
Washington, DC 20044-0663
Tel.: (202) 305-0492
luke.hajek@usdoj.gov

John Buse
Center for Biological Diversity
5656 South Dorchester Avenue
Suite 3
Chicago, IL 60637-1705
Tel.: (323) 533-4416
jbuse@biologicaldiversity.org

/s/ David T. Hardy
David Hardy