Adam Keats (CA Bar No. 191157) (*pro hac vice*)
John Buse (CA Bar No. 163156) (*pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 436-9682 x 304
Facsimile: (415) 436-9683
akeats@biologicaldiversity.org
jbuse@biologicaldiversity.org

Attorneys for Plaintiff Center for Biological Diversity

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PRESCOTT DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>          Plaintiff,<br><br>v.<br><br>U.S. BUREAU OF LAND MANAGEMENT; RON WENKER, Acting Director of U.S. Bureau of Land Management; JAMES KENNA, BLM Arizona State Director; KEN SALAZAR, Secretary of Interior, and U.S. FISH AND WILDLIFE SERVICE,<br><br>          Defendants,<br><br>NATIONAL RIFLE ASSOCIATION,<br><br> Proposed Defendant-Intervenor. | Case No. CV 09-8011-PCT-GMS<br><br>**OPPOSITION TO MOTION FOR LEAVE TO INTERVENE BY NATIONAL RIFLE ASSOCIATION**<br><br>Date: December 14, 2009<br>Time: 1:30 PM<br>Court: Courtroom 601<br>Judge: Hon. Paul G Rosenblatt |

# TABLE OF CONTENTS

INTRODUCTION………………………………………..……………1

BACKGROUND………………………………………….……………1

ARGUMENT..……………………………………….…………….…...2

I.      The NRA does not meet the requirements for intervention as of Right……...………………………………………………….…….2
      1.      The NRA's interests are not directly at stake and are not subject to this action…………..………………...…………3
            a.      The government is the only proper defendant..........3
            b.      There is no evidence of NRA's involvement in the administrative process……………………...............3
            c.      The NRA has no significant protectable interest at risk of impairment………………….....…..............4
            d.      The NRA seeks to interject new issues and introduce extra-record evidence………...…..………………...6
      2.      The resolution of this action will not impair the NRA's interests…………………………………………………….7
      3.      The NRA has failed to show that they are not adequately represented by the federal defendants…............................9
      4.      The motion to intervene is untimely…………..............11
II.      Permissive intervention is unwarranted and should be denied ...13
III.      If allowed to intervene, the NRA should be granted limited status......................................................................................14

CONCLUSION………………………………………………….……15

# TABLE OF AUTHORITIES

Cases

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .................. 7, 10, 11

*Blake v. Pallan*, 554 F.2d 947 (9th Cir. 1977) ......................................... 8

*Churchill County v. Babbitt*, 150 F.3d 1072 (9th Cir. 1998) .................. 3

*Citizens for Better Forestry v. U.S. Dep't of Agric.*, 2009 U.S. Dist. LEXIS 55510 (N.D. Cal., June 30, 2009) ...................................... 5

*Coeur Alaska, Inc. v. Southeast Alaska Conservation Council*, __ U.S. __, 2009 U.S. LEXIS 4730 (2009) ................................................. 6

*Cronin v. Browner*, 898 F. Supp 1052 (S.D.N.Y. 1995) .................... 9, 15

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ........................ 4, 14

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) .......................... 6

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ................................................................................ 13

*Nat'l Wildlife Federation v. Hodel*, Case No. S-85-0837 EJG, 1985 U.S. Dist. LEXIS 16490 (E.D. Cal. 1985) ................................... 5

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)……………………………………………………….3, 12, 14

*San Juan County, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007) ................................................................................................ 12

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993) ................................. 8

*Southeast Alaska Conservation Council v. U.S. Army Corps of Engineers*, 486 F.3d 638 (9th Cir. 2007) ....................................... 5

*State of Montana v. EPA*, 137 F.3d 1135 (9th Cir. 1998) ....................... 8

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004)passim

Statutes

16 U.S.C. § 1531 *et seq.* ........ 3
42 U.S.C. 4321 *et seq.* ........ 3
43 U.S.C. §§ 1701-1785 ........ 3
5 U.S.C. § 706 ........ 7
Fed. R. Civ. P. 24 ........ 15
Fed. R. Civ. P. 24(a) ........ 2
Fed. R. Civ. P. 24(b)(3) ........ 13

## INTRODUCTION

Plaintiff Center for Biological Diversity ("Center") opposes the motion to intervene filed by the National Rifle Association ("NRA"). As explained below, the NRA has not met the requirements for either intervention as of right or permissive intervention. The NRA seeks to intervene to protect its interest in preventing any interference with hunting in the Arizona Strip district, particularly interference that might result from possible future measures taken to reduce lead poisoning of California condors. But the NRA has not demonstrated that the disposition of this action will impair or impede its ability to protect this interest, nor that it even has a stake in the particular issues raised in this complaint. Moreover, the NRA intends to introduce thousands of pages of extra-record evidence and to significantly complicate the issues in this case.

## BACKGROUND

The Center's action concerns the Bureau of Land Management's ("BLM") approval and implementation of the Resource Management Plans ("RMPs") for the Arizona Strip, and the Fish and Wildlife Service's ("FWS") approval of these actions through the issuance of a Biological Opinion. The Center alleges that the RMPs and/or Biological Opinion violate the National Environmental Policy Act ("NEPA"), the Endangered Species Act ("ESA"), and the Federal Land Policy and Management Act ("FLPMA"). The major issues raised in the Complaint are the management (within the Arizona Strip) of off-road vehicle use, livestock grazing, and the use of lead ammunition by hunters. Specifically, regarding lead ammunition and condors, the Center alleges that the evidence before the agencies at the

time they made their decisions indicated that stronger action was required to limit the use of lead ammunition (while the Biological Opinion merely *recommends* that lead ammunition be banned, the RMPs take no action regarding lead ammunition.) First Amended Complaint, p. 28.

The primary remedies sought by the Center are the declaratory relief regarding the legality of the agencies' approvals of the RMPs and the Biological Opinion, and the vacating of the RMPs and Biological Opinion. The only injunctive relief the Center seeks regards motorized vehicle use within the two National Monuments that are in the Arizona Strip. Importantly, no injunctive relief is sought regarding hunting or the use of lead ammunition within the Arizona Strip.

## ARGUMENT

**I.   The NRA does not meet the requirements for intervention as of right.**

"The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (emphasis in original). Pursuant to Federal Rule of Civil Procedure 24(a), to intervene as a matter of right the applicant must establish that: (1) it has a significant protectable interest relating to the property or transaction that is subject to the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the existing parties do not adequately represent the applicant's interest; and (4) the application is timely. *Alisal*, 370 F.3d at 919; Fed. R. Civ. P. 24(a). The NRA has not satisfied any of these factors, let alone all of them, failing the test for intervention as of right.

### 1. The NRA's interests are not directly at stake and are not subject to this action.

#### a. The government is the only proper defendant.

The government is the only proper defendant in this action that seeks review of the RMPs adopted by the BLM and the Biological Opinion issued by the FWS. The Ninth Circuit has held that a private entity cannot intervene on the merits of an environmental lawsuit where the claims are against a federal agency and only the federal agency can comply with the law. *Churchill County v. Babbitt*, 150 F.3d 1072, 1082-83 (9th Cir. 1998). Here, only the government can comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4321 *et seq.*, Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1785, and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, in managing the public lands and endangered and threatened species on public lands in the Arizona desert. The federal Defendants—BLM and FWS--are therefore the only proper defendants in the action.

#### b. There is no evidence of NRA's involvement in the administrative process.

Decisions in which the Ninth Circuit has allowed an exception to its general rule and permitted public interest groups to intervene as defendants in cases challenging federal agency actions generally share a common thread: direct involvement in the administrative proceedings out of which the litigation arose by the group seeking intervention. *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (citations omitted).

The NRA states that they have a current interest in and a decades-long record of opposing unjustified impingements on hunting, nationally and

specifically in Arizona. Mot. to Intervene, p. 4. However, the NRA does not point to its involvement in any stage of the NEPA or ESA processes from which this case arose. The Administrative Record for this case indicates that the NRA did not submit comments to either the BLM or the FWS at any stage of the public review process for either agency's actions.

The NRA is well aware of the need to engage in the public process related to the development of regulations on public lands to protect any identifiable interest, as demonstrated by the declaration of C.D. Michel. Dec. of C.D. Michel in Support of Mot. to Intervene, p. 2 (declarant and NRA worked together to appear before the California Fish and Game Commission to challenge regulations that would have expanded the ban on hunting with lead ammunition within the "Condor Zone.") If the NRA had an interest relating to the property or transaction that is the subject of this action that is so situated that disposing of the action would impair or impede their ability to protect their interest, this interest would have been expressed by involvement in the public scoping and comment process for this project.

### c. The NRA has no significant protectable interest at risk of impairment.

The NRA fails to demonstrate that it has any significantly protectable interest in this action that is at risk of impairment through this action. Proof of a significantly protectable interest requires an interest protected under some law and a *relationship* between the interest and the plaintiff's claim. *Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998). Such a relationship exists "only if the resolution of the plaintiff's claims will actually affect the applicant." *Id*. at 410.

The NRA and the Center have both identified lead ammunition as an issue of concern; however, there is no relationship between the NRA's stated

interest in the issue and the Center's claim for relief. Most importantly, resolution of the Center's claim will not affect this interest. The NRA states that if the Center is successful, "it is not unreasonable to presume…hunting will be at least restricted" in the Arizona Strip. Mot. to Intervene, p. 10. But the NRA presents no evidence to support this claim, which appears to arise from an erroneous understanding of the relief sought and available in this case.[1] Although the Center's complaint identifies the use of lead ammunition as an issue BLM and FWS should have considered in their decision and Biological Opinion, the banning of hunting with lead ammunition in the Arizona Strip is not within the range of possible remedies. Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action. In other words, a court should vacate the agency's action and remand to the agency to act in compliance with its statutory obligations." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 2009 U.S. Dist. LEXIS 55510,*40 (N.D. Cal., June 30, 2009), *quoting Southeast Alaska Conservation Council v. U.S. Army Corps of Engineers*, 486 F.3d

---

[1] The NRA points to *Nat'l Wildlife Federation v. Hodel*, Case No. S-85-0837 EJG, 1985 U.S. Dist. LEXIS 16490 (E.D. Cal. 1985) for the proposition that injunctive relief in this case would result in a hunting ban in the Arizona Strip. *Hodel* was not as similar to this action as the NRA claims, however. The plaintiff in *Hodel* specifically sought to enjoin hunting with lead shot in certain areas that the federal defendants were affirmatively opening to hunting. Here, the Center does not seek to enjoin any hunting at all in the Arizona Strip and the federal defendants are not taking an affirmative action to open the area to hunting; rather, the Center seeks to have the BLM's approval of its RMP for the Arizona Strip vacated and set aside and to have the FWS's approval of its Biological Opinion vacated and set aside. There is no basis for alleging that hunting may not continue (with or without lead ammunition) in the absence of a RMP and/or a Biological Opinion. The only injunctive relief sought by the Center regards motor vehicle use in the National Monument areas of the Arizona Strip, and this is not an issue raised by the NRA.

638, 654 (9th Cir. 2007), *rev'd on other grounds, Coeur Alaska,Inc. v. Southeast Alaska Conservation Council*, __ U.S. __, 2009 U.S. LEXIS 4730 (2009); *see also Federal Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case."). Thus, success on the part of the Center for its claims regarding the condor would result in an order by this Court requiring either or both agencies to vacate their respective approvals, remanding the issues to the agencies, who would then re-engage the public in the development of new RMPs and a new Biological Opinion, properly considering the issue of lead ammunition's poisoning of condors. As discussed below, the NRA will have ample opportunity to participate in this process if the Center prevails.

### d. The NRA seeks to interject new issues and introduce extra-record evidence.

Intervention is not intended as a means for a party to interject new, unrelated issues into the pending litigation. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Yet the NRA seeks to submit thousands of pages of documents to supplement the Administrative Record and to admit additional expert testimony in support of their arguments. Mot. to Intervene, p. 14; Dec. of C.D. Michel in Support of Mot. to Intervene, p. 3. This extra-record evidence allegedly "suggests, in fact, that lead poisoning may not be the leading cause of death of condors released in Arizona." Mot. to Intervene, p. 14. But adjudication of the Center's claims will almost certainly not be based on any additional volumes of information regarding the impacts of the use of lead ammunition on condor mortality. Rather, the relevant evidence in determining whether the agencies' decisions and opinions were proper is the evidence before the agencies *at the time of the*

*decision* (i.e., the evidence contained in the Administrative Record). *See* 5 U.S.C. § 706. The NRA has not articulated a valid exception to this general rule.

The NRA apparently seeks to intervene in this action so as to precipitate a debate about the impact of lead ammunition on condors. But this action, limited as it is to an existing Administrative Record and confined to specific decisions made by the BLM and the FWS, is an inappropriate forum for that debate. If the Center is successful, the NRA, along with every other interested stakeholder, will have the opportunity to participate in the BLM's and FWS's decision-making processes that will be required as part of the agencies' preparation of new RMPs and Biological Opinion.

Importantly, allowing the NRA to intervene and then submit its voluminous extra-record evidence would necessarily compel the Center to submit extra-record evidence to dispute the NRA's claims. This would vastly complicate this litigation and detract from the proper focus on the federal agencies' decisionmaking, but most problematically it would place the initial burden of reviewing and weighing this evidence on this Court, without the benefit of any initial review or input from the responsible agencies who possess the governmental expertise on the subject.

### 2. The resolution of this action will not impair the NRA's interests.

The NRA lacks a significantly protectable interest, as previously explained, and therefore cannot have that interest impaired. Yet, even if the Court finds that the NRA has demonstrated a significantly protectable interest in this case, intervention is proper only if this action will, as a practical matter, impair or impede the NRA's ability to protect that interest. *Alisal*, 370 F.3d at 919. This part of the Ninth Circuit's four-part test

considers whether a prospective intervenor's interest is causally related to the outcome of the litigation, and whether subsequent administrative or judicial proceedings afford the prospective intervenor adequate protection of its alleged interests. *See State of Montana v. EPA*, 137 F.3d 1135, 1142 (9th Cir. 1998); *Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993). Mere inconvenience caused by the added expense and delay associated with filing a separate proceeding is not sufficient impairment to justify intervention as of right. *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977). The NRA's motion to intervene fails under this factor, for which courts must consider whether separate or subsequent administrative or judicial proceedings can afford the proposed intervenor adequate protection of its interests. *Alisal,* 370 F.3d at 921.

      Here, the Center is not asking the Court to ban the use of lead ammunition in the Arizona Strip or to enjoin hunting in any way, but rather is asking the Court to set aside the RMP and the Biological Opinion for the plan. First Amended Complaint, p. 36. The NRA cannot demonstrate impairment to its interests because any such banning of lead ammunition or restriction of hunting would be the result of a new administrative process, not the immediate and direct result of this litigation. *Cronin v. Browner*, 898 F. Supp 1052, 1062-63 (S.D.N.Y. 1995).

      Even if the Court grants the Center the full relief sought, the NRA would have ample opportunities to address their interests through the notice and comment processes accompanying the development of revised RMPs by the BLM and a new Biological Opinion by the FWS. At that time, the NRA would have the opportunity to submit any information it has regarding the use of lead ammunition, its availability, and its impacts on condor mortality.

      The NRA has offered no evidence that the relief sought by the Center

could impede or impair any alleged interest in the use of lead ammunition. Because the relationship of the NRA's stated interest to this case is so tenuous, and this interest can be better protected through other administrative or judicial proceedings, intervention should be denied.

### 3. The NRA has failed to show that they are not adequately represented by the federal defendants.

Applicants for intervention bear the burden of demonstrating the inadequacy of representation by the existing parties, and when, as here, an applicant's interest is the same as one of the present parties, a presumption of adequacy arises and a compelling showing is required to demonstrate inadequate representation. *Arakaki*, 234 F.3d 1297, 1305 (9th Cir. 1997). Here, the NRA and federal Defendants seek the same result: an order upholding BLM's approval of the RMP and the Biological Opinion of the FWS. There is nothing to demonstrate that BLM and FWS are unwilling or unable to defend their decision. *See* Defendants' Answer to Plaintiffs' First Amended Complaint. The Center has raised the issue of the inadequacy of BLM's and FWS's consideration of the impacts of lead ammunition on condor mortality. The only proper argument to be made by the NRA is that the BLM's and FWS's consideration of this issue was adequate, an argument certain to be made by the federal defendants. Given this complete overlap of interests, the NRA has not shown and cannot show any inadequate representation.

In light of the presumed adequacy of representation, the NRA has not made a compelling showing that the representation by BLM and FWS is inadequate. The Ninth Circuit looks at three factors to determine whether an applicant's interest will be adequately represented by existing parties: "(1) whether the interest of a present party is such that it will undoubtedly make

all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Arakaki*, 324 F.3d at 1086.

The NRA's assertion that BLM and FWS will not adequately represent them because they have different objectives and that the BLM and FWS will not make all of the NRA's arguments is a thinly veiled attempt to convince this Court to allow the NRA to submit extra-record evidence (that the NRA is currently still in the process of obtaining) in this record-review case. Mot. to Intervene, p. 14. The NRA would like to "disprove CBD's assertion that 'the evidence is overwhelming and there is scientific consensus that hunter-shot lead ammunition is the primary, if not the sole, source of lead that is poisoning California condors.'" *Id*. Rather than asserting divergent interests from BLM and FWS, the NRA asserts a different interpretation of the evidence and documentation considered by the federal Defendants in the administrative proceeding leading to this case. The time for the NRA to submit voluminous information and offer its expertise on the California condor was during the administrative proceeding on the RMPs, not during this litigation.

The NRA asserts that BLM and FWS may not have the level of expertise necessary to defend against the Center's claims. *Id*. at 15. However, the NRA admits that FWS has been engaged in the introduction of California condors to Arizona since 1996 and points to FWS's consideration of the facts related to condor mortality and lead ammunition. *Id*. Again, the NRA simply disagrees with the conclusions of FWS and wishes to submit post-approval, extra-record information regarding its interpretation of the evidence in the record.

The NRA's assertion that BLM and FWS will not adequately represent the NRA and its members because of the federal Defendants' broad public agency obligations is unavailing because the NRA can point to nothing that shows that BLM and FWS will not vigorously defend their respective decisions to approve the RMPs and issue the Biological Opinion. When parties seek the same outcome, a difference in strategy or opinion does not meet the burden of showing inadequate representation. *Arakak*, 324 F.3d at 1086 ("differences in litigation strategy do not normally justify intervention"); *Northwest Forest Res. Council v. Glickman*, 82 F.3d at 838 (differing strategy and opinions failed to demonstrate inadequacy of government's representation); *see also San Juan County, Utah v. United States*, 503 F.3d 1163 at 1203-1207 (10th Cir. 2007).

### 4. The motion to intervene is untimely.

Timeliness is a flexible concept left to the court's discretion where the court weighs three factors: (1) the stage of the proceeding, (2) prejudice to other parties, and (3) the reason for and length of the delay. *Alisal*, 370 F.3d at 921 (internal quotations omitted). Given the NRA's delay in moving to intervene, and its threat to further delay and complicate the case by introducing thousands of pages of documentation not relevant to the federal Defendants' liability, the NRA's motion fails under this factor as well.

Contrary to the NRA's statement that there was no unreasonable delay in bringing this motion, it seeks intervention more than six months after this litigation commenced. The Administrative Records from both federal Defendants have been prepared and distributed to all parties. Moreover, the NRA did not participate in the administrative process leading to adoption of the RMPs, which began more than five years ago and included ample opportunity for comment on the relationship between lead ammunition and

condor mortality.

Intervention at this time prejudices existing parties with delay, is a disruption of the litigation, and threatens to complicate matters significantly (more than 10,000 documents have been gathered by the NRA over a number of years and "thousands more pages of documents" are currently being processed, all to dispute the quality of scientific analyses that demonstrate a link between lead ammunition used in hunting and condor mortality). Dec. of C.D. Michel in Support of Mot. to Intervene, p. 2-3. The threat of delay is highlighted by the NRA's own statement that the review of documents they allege to be relevant "has taken hundreds of hours" and "is ongoing." *Id*. The review of the documents the Center anticipates that the NRA will submit for this case will similarly take hundreds of hours and the response could be similarly voluminous and time consuming.

Additionally, the NRA offers no explanation for its delay. "A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *Alisal*, 370 F.3d at 923 (citation omitted). The crucial date for timeliness is the date the applicant should have been aware of its interest in the matter. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997). The NRA offers no evidence it was unaware of these proceedings, and cannot offer such evidence. Given their stated interest, the NRA knew or should have known of the RMP process long ago. There is no justification for the NRA's delay, and it has not even attempted to offer an explanation with its motion.

The NRA does not meet the requirements for intervention and, therefore, the Court should deny the motion to intervene as of right.

## II.     Permissive intervention is unwarranted and should be denied.

The NRA's request for permissive intervention should be denied because they have failed to demonstrate that permissive intervention is warranted. A court may allow permissive intervention under Federal Rule of Civil Procedure 24(b) only if the applicant demonstrates that: "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."  *Donnelly v. Glickman*, 159 F.3d at 412 (citation omitted). Even if these requirements are met, the court has discretion to deny the intervention. *Id*.

The NRA has not met its burden on any of these factors. First, for the reasons stated above, the NRA's motion to intervene is not timely. Second, the NRA's motion should be denied because it does not demonstrate that the NRA shares a common question of law or fact with the Center's action. As described above, the NRA seeks to protect an interest that is unrelated to the specific issue in this case and which cannot be impaired by the outcome, and intends to insert additional information that has no bearing on the review of the administrative record in this case. Third, the NRA has not established there is an independent basis for jurisdiction. *Northwest Forest Res. Council*, 82 F.3d at 839.

Most importantly, permissive intervention should be denied because the NRA's participation will "unduly delay [and] prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The NRA brings nothing new to this case that is relevant or necessary for adjudication. They assert no legal position that differs from the outcome sought by BLM and FWS. They merely seek to engage—tardily—in a debate about the interpretation of scientific literature and evidence. To the degree that the

NRA's interest diverges from BLM and FWS, its participation in the case will unnecessarily complicate the litigation with voluminous, extra-record evidence and information requiring the Center to submit potentially equally voluminous evidence and information. Intervention would subject the parties and the Court to repetitive and duplicative briefing, burdening the Center, thwarting judicial economy, and causing undue delay.  In cases seeking to enforce environmental laws in the public interest, delays due to intervention are especially prejudicial to parties and the public because they can stall the resolution of important environmental issues. *Cronin*, 898 F. Supp. at 1063; *Alisal*, 270 F.3d at 923 ("intervention could complicate and delay longstanding efforts by the United States to ensure safe drinking water").  In light of the numerous reasons that the NRA's motion to intervene is not warranted, the Center respectfully requests this Court to deny their motion.

### III.     If allowed to intervene, the NRA should be granted limited status.

If the Court decides to permit the NRA to intervene, the Center requests that the Court limit the NRA's participation.  *See* Advisory Committee Notes on Fed. R. Civ. P. 24 (an intervention "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings").  Specifically, the Center asks that the Court limit the NRA to the claims raised by the filed complaint and prohibit them from submitting extra-record evidence and of interjecting collateral issues into the case.  Additionally, the NRA should be ordered to file joint briefs with the BLM and FWS, within the page limits provided in the local rules and be precluded from filing independent motions, i.e. those not joined by BLM and FWS.  Finally, intervention should be limited to the remedial phase of this case because the NRA's sole

purpose for moving to intervene is to protect an alleged interest that they claim would be impaired only in the remedy phase of this proceeding.

## CONCLUSION

For the above reasons, the NRA's motion for intervention as of right or permissive intervention should be denied. Alternatively, the NRA's participation should be limited to the remedy phase, and conditioned upon limits that will serve judicial economy.

DATED: October 26, 2009

                                                _/s/ Adam Keats_____

                                      Adam Keats (CA Bar No. 191157)
                                      John Buse (CA Bar No. 163156)
                                      CENTER FOR BIOLOGICAL DIVERSITY
                                      351 California Street, Suite 600
                                      San Francisco, CA 94104
                                      Telephone: (415) 436-9682 x 304
                                      Facsimile: (415) 436-9683
                                      akeats@biologicaldiversity.org
                                      jbuse@biologicaldiversity.org

                                      Attorneys for Plaintiff Center for Biological Diversity

# **CERTIFICATE OF SERVICE**

      I hereby certify that on October 26, 2009, I electronically transmitted the document **Opposition to Motion for Leave to Intervene by National Rifle Association** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Luther Langdon Hajek
US Dept of Justice ENRD
PO Box 663
Ben Franklin Station
Washington, DC 20044-0663
luke.hajek@usdoj.gov

Seth M. Barsky
US Dept of Justice
Env. & Nat. Res. Div.
601 D St NW
Washington, DC 20004
seth.barsky@usdoj.gov

Srinath Jay Govindan
US Dept of Justice
Env. & Nat. Res. Div. WMRS
PO Box 7369
Washington, DC 20044-7369
Jay.Govindan@usdoj.gov

Sue A Klein
US Attorney's Office
40 N Central Ave, Ste 1200
Phoenix, AZ 85004-4408
sue.klein@usdoj.gov

Carl Dawson Michel
Michel & Associates PC
180 E Ocean Blvd, Ste 200
Long Beach, CA 90802
562-216-4444
michel@michelandassociates.com

David T Hardy
David T Hardy PC
8987 E Tanque Verde
PMB 265
Tucson, AZ 85749
520-749-0241
dthardy@mindspring.com

William Lee Smith
Michel & Associates PC
180 E Ocean Blvd, Ste 200
Long Beach, CA 90802
662-216-4444
lsmith@michelandassociates.com

Dated:  October 26, 2009                        /s/ *Adam Keats*

                                                       Adam Keats