**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity,<br><br>    Plaintiff,<br>vs.<br><br>United States Bureau of Land<br>Management, et al.,<br><br>    Defendants. | No. 09-CV-8011-PCT-PGR<br><br>**ORDER** |

Currently before the Court is the Motion to Intervene filed by Proposed Defendant-Intervenor National Rifle Association ("NRA"). On December 14, 2009, the Court held oral arguments on the matter. The NRA's proposed intervention is based largely on its assertion that the relief Plaintiff Center for Biological Diversity ("CBD") seeks conflicts with federal law. The NRA contends that if the relief sought by the CBD is granted, it will significantly and unnecessarily burden the longstanding tradition of hunting in northwestern Arizona. The NRA maintains that it has both a current interest in, and a decades long record of, opposing what it considers unjustified impingements on hunting nationally and in Arizona. Specifically, the NRA seeks leave to intervene as to the factual and legal allegations implicating hunting (specifically as to the Fourth and Fifth Claims for Relief) made in Plaintiff's First Amended Complaint.

**Background**

Plaintiff challenges the issuance by the U.S. Bureau of Land Management ("BLM")of three resource management plans ("RMP") for the Grand Canyon-Parashant and Vermillion Cliffs National Monuments ("the Monuments") and the lands managed by the Arizona Stip Field Office ("ASFO"). In its First Amended Complaint, Plaintiff alleges that the BLM and the U.S. Fish and Wildlife Service (FWS) have failed to comply with the National Environmental Policy Act, 42 U.S.C. § 3421 et seq. ("NEPA"), the Federal Land Policy and Management Act, 43 U.S.C. § 1701 et seq. ("FLPMA"), and the Endangered Species Act, 16 U.S.C. § 1536(a)(2)("ESA") by refusing to incorporate actions necessary to protect public lands and endangered and threatened species from adverse impacts of excessive off-road vehicle ("ORV") use, livestock grazing, and the use of lead ammunition in their land and wildlife management planning for Monuments and other federal lands administered by the ASFO. Plaintiff alleges that the BLM's issuance of the RMPs was arbitrary, capricious, or otherwise not in accordance with the law and therefore in violation of the Administrative Procedure Act ("Act"), 5 U.S.C. § 706(2). Therefore, it contends that the BLM's and the FWS's issuance of the RMPs and Biological Opinion ("BiOp") were arbitrary, capricious, and unlawful and a violation of the ESA.

The NRA has filed a Motion to Intervene to address the following claims: (**4**) violation by BLM and FWS of Sections 7(a)(1), 7(a)(2), and 7(b)(4) of the ESA by failing to ensure against jeopardy of the California Condor and (**5**) violation by FWS of the ESA, 16 U.S.C. § 1536(a)(2), by issuing an unlawful biological opinion.

**Legal Standard and Analysis**

The NRA contends that it satisfies the requirements for intervention as of right under FRCP Rule 24(a), as well as the requirements for permissive intervention under FRCP Rule 24(b). The NRA asserts that the CBD seeks declaratory relief based on the allegedly insufficient consideration by the BLM and the FWS of how lead ammunition (i.e.,

ammunition incorporating a lead projectile) use impacts California condors in the Arizona Strip District ("ASD"). The NRA states that the alleged ESA violations arise from the supposition that California condors in Arizona, part of an "experimental and nonessential population" (see 16 U.S.C. Section 1539(j) and 50 C.F.R. Part 17.84(j)), are scavenging hunter-shot game, and as a result are being poisoned by lead shot or bullets present in the carrion. (See Complaint at p. 21, ¶ 49). The NRA contends that the CBD's contention is based on faulty scientific analyses. The NRA further contends that this exact supposition was raised, addressed, and dismissed over ten years ago when California condors were introduced to Arizona. See generally Fish and Wildlife Service, 61 Fed. Reg. 54,044 (Oct. 16, 1996).

Intervention as a Matter of Right Fed.R.Civ.P. 24(a)

Intervention as of right is governed by Federal Rule of Civil Procedure 24(a)(2). The Ninth Circuit construes Rule 24(a) liberally in favor of potential intervenors. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir.2001). In determining whether intervention is appropriate, the Ninth Circuit applies a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. California ex rel. Lockyer, 450 F.3d 436, 440 (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir. 1993)).

1. Timeliness

Timeliness is a flexible concept. Its determination is left to the district court's discretion. Dilks v. Aloha Airlines, 642 F.2d 1155, 1156 (9th Cir.1981). The Court weighs three factors when determining whether a motion to intervene is timely, "(1) the stage of the proceedings at which an applicant seeks to intervene; (2) the prejudice to other parties; and

1 (3) the reason for and length of the delay." <u>United States v. Alisal Water Corp.</u>, 370 F.3d 915, 921 (9th Cir. 2004).

In the pending case, the CBD argues that intervention is untimely, as the NRA seeks intervention more than six months after the filing of the Amended Complaint. It further argues that the NRA did not participate in the administrative process, which began more than five years ago and included the opportunity to comment on the relationship between lead ammunition and condor mortality-the matter now raised by the NRA.

The NRA contends that there was no unreasonable delay because it was not apprised of the lawsuit until after the Amended Complaint was filed (March 2009). Within months thereafter, the NRA states that it evaluated the issues raised, determined that it would file the motion, had it prepared, and filed it. It further maintains that it was in negotiations with the government from the inception of the idea of releasing California condors into the ASD. Therefore, it contends that CBD's argument that it was not a part of the administrative process is misplaced.

As far as delay, the parties have not yet met for a scheduling conference, therefore, the Court finds that the stage of proceedings is early enough that the parties will not be prejudiced by the intervention. Furthermore, although the reason for filing the Motion to Intervene approximately nine months after the case was filed and six months after the Amended Complaint was filed is not crystal clear, the NRA did offer reasons such as hunting season, research on the issue, determination as to whether to get involved in the matter, and preparation of the Motion to Intervene. As timelines is a flexible issue and there has been no apparent prejudice to any parties, the Court finds that the motion is timely. <u>Aloha Airlines</u>, 642 F.2d at 1156.

/ / /
/ / /
/ / /

2.   Significantly Protectable Interest

Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a "practical, threshold inquiry," and "[n]o specific legal or equitable interest need be established." Greene v. United States, 996 F.2d 973, 976 (9th Cir.1993), aff'd, 64 F.3d 1266 (9th Cir.1995). The movant must, however, demonstrate a "significantly protectable interest" in the lawsuit to merit intervention. Forest Conservation Council, 66 F.3d at 1493 (internal quotation marks omitted). To demonstrate this interest, a prospective intervenor must establish that (1) "the interest [asserted] is protectable under some law," and (2) there is a "relationship between the legally protected interest and the claims at issue." Id. (citing Sierra Club v. EPA, 995 F.2d 1478, 1484 (9th Cir.1993)).

The NRA asserts that its nationwide advocacy for hunters' rights establishes its interest in this litigation. It contends that it has established a record of advocating against the restrictions on hunting that have been based on scientifically unsupported claims of alleged environmental harm, which it contends is occurring in the present lawsuit. The NRA argues that there is a likelihood that there could be a direct impact on hunting vis-a-vis the possibility of an injunction banning hunting with lead ammunition in the ASD if no party rebuts the CBD's "unfounded claim that the 'evidence is overwhelming and there is scientific consensus that hunter-shot lead is the primary, if not sole, source of lead poisoning California condors.'" The NRA contends that one of the goals of the lawsuit is to eliminate the use of lead ammunition in the ASD (which it contends is a restriction on hunting) and because the NRA has an interest in preventing such a restriction, the NRA contends it has satisfied this

- 5 -

element. The Court agrees that as to establishing a significantly protectable interest, the NRA has established that it is protecting hunting rights in the ASD and this is related to the matter at issue in this lawsuit involving lead ammunition and the California Condor.

3. Disposition May Impair or Impede NRA's Ability to Protect Its Interest

Under the third prong of Rule 24(a), a potential intervenor must demonstrate that the litigation "may as a practical matter impair or impede" its ability to protect its interests. Fed. R. Civ. P 24(a)(2); see Lockyer, 450 F.3d at 440. In the pending matter, the CBD attempts to challenge BLM's adoption of particular Resource Management Plans and FWS' issuance of a Biological Opinion. The CBD seeks declaratory relief holding the aforementioned agency actions violated ESA by failing to consider the contention that hunters' use of lead ammunition can put California condors in jeopardy. Further, CBD seeks judicial review under 16 U.S.C. Section 1540(g), which authorizes the injunction of an activity, even if such activity is conducted by the Federal Government. If CBD is able to obtain injunctive relief that effectively enjoins or limits the use of lead ammunition for hunting in the ASD, or if the CBD obtains a settlement wherein the FWS and the BLM agree to some level of restriction on lead ammunition use, the NRA contends that it will substantially affect the interests of NRA members and other hunters who enjoy hunting in the ASD. The NRA maintains that such an injunction or settlement would deprive ASD hunters of the ammunition they consider to be abundant, economical, and ballistically proven. The NRA further argues that to the extent non-lead ammunition is not generally available in the calibers used for hunting small game and turkey, a judicially imposed or settlement-based lead ammunition ban would

preclude the hunting of such animals in the ASD by hunters who cannot afford or locate non-lead ammunition.

4. Adequacy of Representation of Potential Intervenor by the Current Parties to the Action

To determine whether potential intervenor's interest is adequately represented by the existing parties, courts in the Ninth Circuit consider (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceedings that other parties would neglect. Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). As previously stated by the Ninth Circuit, "[t]he most important factor in determining the adequacy of representation is how the interest [of the proposed intervenor] compares with the interests of existing parties." Id. (citation omitted).

The NRA asserts that its interests are not adequately represented by the current Defendants. It contends that the current Defendants have a different position as to the link between lead ammunition use and the mortality rate of California condors. In their Answer, the current Defendants admitted that, "[since the condors have been released in Arizona their leading cause of death has been lead poisoning, with at least 12 to 14 condors dying of lead poisoning in Arizona." Thus, the NRA believes that the current Defendants do not adequately represent its position. The NRA intends to argue that the administrative record and the relevant scientific data do not support the CBD's assertion regarding the prevalence

- 7 -

of lead-related condor mortalities. The NRA is focused on the hunting aspect and protecting its members' rights and all hunters' rights to hunt with lead ammunition in the ASD. This is not the objective of the current Defendants.

In light of the foregoing, the Court finds that the NRA has established that intervention as of right is warranted. The CBD has requested that should the Court make such a determination, the Court limit the NRA's participation to the claims raised by the Complaint and prohibit the NRA from submitting extra-record evidence or interjecting collateral issues. Furthermore, CBD has requested that the NRA should be required to file joint briefs with the current Defendants within the page limits provided in the Local Rules and the NRA's intervention should be limited to the remedial phase of the case as the NRA's sole purpose for intervening is to protect an interest that would be impaired only in said phase of the proceeding. The current Defendants also requested that the Court impose conditions upon the NRA's participation in the lawsuit. They have requested that the NRA not be permitted to conduct discovery or introduce extra-record evidence, that it not be permitted to expand the scope of the claims being litigated, and that it is limited to the scope of the fourth and fifth claims in the Complaint.

The Court finds that limiting the NRA's participation to the fourth and fifth claims raised by the Complaint and prohibiting the NRA from submitting extra-record evidence[1] or

---

[1] At oral arguments, the NRA submitted that it had no intention of introducing extra-record evidence unless and until the other parties did the same. The Court reminds all parties

interjecting collateral issues is appropriate under the circumstances. The matter of whether its participation will be limited to the remedial phase of the lawsuit and whether discovery by the NRA will be permitted will be addressed at the scheduling conference previously scheduled for February 8, 2010.

IT IS HEREBY ORDERED GRANTING the Motion to Intervene. (Doc. 39.) The intervention is limited to Claims four and five in the Complaint. However, the NRA may file its own briefs throughout the pendency of the lawsuit, it is not limited to filing joint briefs with the current Defendants.

DATED this 13th day of January, 2010.

Paul G. Rosenblatt
United States District Judge

---

that this case is based upon the administrative record.